UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DANIELLE WARE,

        Plaintiff

v.                                 Case No. 1:11-cv–252-HJW

JENNY CRAIG, INC., et al.,

        Defendants

## ORDER

This matter is before the Court upon the "Partial Motion to Dismiss" (doc. no. 6) by Jenny Craig, Inc. ("Jenny Craig") and Maria Levine (collectively "defendants"). Plaintiff opposes the motion. Having considered the record, including the pleadings, the parties' briefs, and relevant authority, the Court will <u>deny</u> the motion for the following reasons:

**I. Factual Allegations**

In her complaint, plaintiff indicates that beginning in April 1996, she worked part-time, i.e. 15 to 20 hours per week, as a weight loss consultant at a Jenny Craig weight management center (doc. no. 3 at ¶¶ 2, 8, 10). In 2008, plaintiff became pregnant (¶ 12). She discussed her need for some time off and her desire to return to work thereafter with the director at Jenny Craig. After some time off for childbirth, plaintiff returned and continued to work at Jenny Craig (¶ 13). In November of 2009, a new director, Maria Levine, was appointed at the Jenny Craig center where plaintiff worked. Plaintiff, who is African-American, alleges that despite her excellent job performance record, Levine "acted coolly" toward her and treated her unfavorably

and disparately from Caucasian employees (¶¶ 14-21).

In 2010, plaintiff became pregnant again, with a due date of October 15, 2010 (¶ 28). As before, plaintiff informed her employer that she needed to take six to eight weeks off from work for childbirth and that she intended to return to work afterwards (¶¶ 35). However, according to plaintiff, Levine advised her that her last day of work would be October 15, 2010 (¶ 33). Jenny Craig advertised for and hired an employee to replace plaintiff (¶ 37) and terminated plaintiff's employment on October 15, 2010 (¶¶ 34, 39).[1] Plaintiff alleges that this new employee "quit shortly after she was hired" (¶ 37), but that when plaintiff inquired about returning to work at Jenny Craig, Levine told her that there was no longer any position available for her (¶ 36).

Plaintiff filed a two-count complaint in the Ohio Court of Common Pleas in Warren County against Jenny Craig, Inc. and its local director, Maria Levine. The complaint alleges employment discrimination under Ohio law on the basis of race (Count One) and pregnancy/gender (Count Two). The defendants removed the case to federal court on the basis of diversity jurisdiction. Defendants filed a "Partial Answer" (doc. no. 5) denying the allegations of Count One, and a "Partial Motion to Dismiss" (doc. no. 6) moving for dismissal of Count Two. Plaintiff responded (doc. no. 9), and defendants replied (doc. no. 10).

---

[1]The complaint alleges that plaintiff worked at Jenny Craig until November 30, 2010 (¶ 2), but also alleges she was not permitted to work there "after October 15, 2010" (¶ 34). Defendants indicate in their answer that plaintiff worked at Jenny Craig until October 17, 2010 (doc. no. 5 at ¶ 11), but in their motion to dismiss cite paragraphs of the complaint that allege October 15, 2010 as the termination date (doc. no. 6-1 at 2, citing complaint at §§ 33, 34).

**II.  Standard of Review**

Initially, the parties dispute which procedural rules apply here.  Defendants assert that Rule 12(b)(6) of the Federal Rules of Civil Procedure applies and cites the well-known decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that a complaint must contain "enough facts to state a claim to relief that is plausible on its face") and Ashcroft v. Iqbal,129 S.Ct. 1937, 1953 (2009) (holding that this standard applies to "all civil actions" in federal court).

Plaintiff argues that Ohio's Rules of Civil Procedure apply, rather than the Federal Rules of Civil Procedure.  Plaintiff contends that her complaint was filed "solely under Ohio law, in an Ohio court" and that "Ohio's pleadings standards are significantly different from those set forth in Ashcroft and Twombly" (doc. no. 9 at 11).  Plaintiff argues that "Ohio is a 'notice-pleading state' and . . . does not ordinarily require a plaintiff to plead operative facts with particularity" (Id. at 4).  Plaintiff contends that "[t]here should be no question that Plaintiff's complaint complies with Ohio's pleading standard" (Id. at 5, underlining in original).  After suggesting that the Ohio pleading rules are allegedly less demanding than their federal counterparts, plaintiff then argues that her complaint nonetheless also satisfies the federal pleading requirements.

In the first place, and contrary to plaintiff's suggestion, the federal rules also require "notice" pleading.  See Fed.R.Civ.P. 8(a)(2)(providing that a complaint need only contain "a short and plain statement of the claim showing the pleader is entitled to relief").  Moreover, as various courts have observed, the pertinent Ohio and

federal rules are substantially similar. See, e.g., Fink v. Twentieth Century Homes, Inc., 2010 WL 4520482 (Ohio App. 8th Dist) (citing Bell Atlantic extensively in ruling on motion to dismiss under Ohio's Rule 12). That said, the Federal Rules of Civil Procedure apply in this federal diversity action. See Fed.R.Civ.P. 81(c) ("These rules apply to a civil action after it is removed from a state court."). The only issue here is whether Count Two states a claim for which relief may be granted pursuant to Rule 12(b)(6). Fed.R.Civ.P. 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. Iqbal, 129 S.Ct. at 1950. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1949 (quoting Bell Atlantic, 550 U.S. at 550). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation." Id. The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Bell Atlantic, 550 U.S. at 556 n.3.

### III. Discussion

Count Two alleges pregnancy/gender discrimination in violation of the Ohio Civil Rights Act, Ohio Rev. Code § 4112 et. seq. The Ohio anti-discrimination statute is patterned on Title VII of the Civil Rights Act of 1964, which prohibits discrimination

because of sex. 42 U.S.C. § 2000e-2(a). This includes the Pregnancy Discrimination Act ("PDA"), which in 1978 amended Title VII to include discrimination on the basis of pregnancy within the category of unlawful gender discrimination. 42 U.S.C. § 2000e (k).

The Ohio anti-discrimination statute, at § 4112.02, specifically provides in relevant part: "it shall be an unlawful discriminatory practice: (A) for any employer, because of the…sex…of any person, <u>to discharge without just cause</u>, <u>to refuse to hire</u>, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matters directly or indirectly relating to employment" (doc. no. 9 at 8, underlining added).  The Ohio statute further specifies that "the terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions." Ohio Rev. Code § 4112.01(B).  The latter section is Ohio's analogue to the federal PDA, which protects female workers from being treated differently from other employees merely because of their capacity to bear children, but does not create substantive rights to preferential treatment. <u>Priest v. TFH-EB, Inc.</u>, 127 Ohio App.3d 159, 165 (Ohio Ct. App. 1998).

Given the similarity between the state and federal anti-discrimination statutes, Ohio courts have consistently looked to federal cases when interpreting Ohio's statutes. <u>Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n</u>, 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (1981). "[F]ederal case law

interpreting Title VII ... is generally applicable to cases involving alleged violations of R.C. § 4112." Kocak v. Community Health Partners of Ohio, Inc., 400 F.3d 466, 472 (6th Cir.), *cert. denied*, 546 U.S. 1015 (2005).

In the present case, plaintiff's complaint alleges that 1) Jenny Craig "terminated her employment on account of her gender" and that 2) when she was "released to return to work by her doctor, Defendant Levine told her that there was no longer any position available to her" (doc. no. 3 at ¶¶ 36, 41). As pleaded, the complaint appears to assert both a "termination of employment" theory and a "failure to hire" theory.

In their motion to dismiss Count Two, defendants address only the first theory. They correctly assert that "Ohio law does not require employers to provide job-protected leave to pregnant employees who are not otherwise eligible for such leave" (doc. no. 10 at 1). Defendants point out that plaintiff was a part-time employee who worked less than 1250 hours in the past year and was not eligible for job-protected leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Defendants also point out that the complaint does not allege "that Jenny Craig was required to hold open plaintiff's part-time position while she missed 6-8 weeks of work for the birth of a child, or that Jenny Craig held open the position of similarly-situated non-pregnant employees while they missed similar amounts of work" (doc. no. 6 at 1).

Review of the complaint reflects that plaintiff acknowledges that she worked no more than 15-20 hours each week, which would amount to less than the required

1250 hours of service for the preceding 12 month period. See 29 U.S.C. § 2612(a)(1)(D). An "eligible employee is one who has been employed for at least twelve months by the employer with respect to whom leave is requested, and who has been employed by that employer for at least 1,250 hours of service during the twelve-month period immediately preceding the commencement of the leave." Davis v. Michigan Bell Telephone Co., 543 F.3d 345, 347 (6th Cir. 2008) (citing 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a)(2)).

Although conceding that she was not eligible for FMLA leave, plaintiff nonetheless contends that Ohio law requires employers to provide pregnant employees with mandatory leave for pregnancy, even if the employee is not otherwise eligible for such leave, citing Nursing Care Management of America, Inc. v. Ohio Civil Rights Commission, 910 N.E.2d 483 (Ohio Ct. App. 5th Dist. 2009) in support of her interpretation of Ohio Rev.C. § 4112.02 and its implementing regulation, Ohio Admin. Code 4112-5-05 (doc. no. 9 at 8).

However, the Ohio Supreme Court expressly overruled Nursing Care Management case (and its interpretation of section 4112.02 and implementing regulations) in McFee v. Nursing Care Mgmt. of Am., Inc., 126 Ohio St.3d 183 (2010). Like the present plaintiff, McFee was terminated because she took leave from work even though she was not eligible for such leave. The Ohio Supreme Court held that the Ohio Civil Rights Act, at § 4112.02(A), "does not provide greater protections for pregnant employees than non-pregnant employees" and that job-protected medical leave is required only for those who meet the minimum eligibility requirements for

that leave. Id. at 186, ¶ 13.

Defendants correctly assert that, as a matter of Ohio law, employers are not required to provide maternity leave to persons, such as plaintiff, who do not meet the minimum eligibility requirements for a job-protected leave of absence under their employer's policies or under the FMLA. See McFee, 126 Ohio St.3d at 190, ¶ 33 (emphasizing that "to require maternity leave regardless of whether the pregnant employee satisfied the employer's minimum-length-of-service requirements would render meaningless the phrase in Ohio Adm.Code 4112-5-05(G)(5) that "if the female meets the equally applied minimum length of service requirements for leave time, she must be granted a reasonable leave on account of childbearing").

Given the Ohio Supreme Court's binding interpretation of Ohio law under McFee, which this Court must apply in this diversity action, and given that plaintiff's complaint alleges facts indicating she did not meet the criteria for eligibility for FMLA leave, Count Two does not state a plausible claim under Ohio law for pregnancy/gender discrimination on the basis that she was terminated for taking FMLA leave to which she was not entitled. See, e.g., Spees v. James Marine, Inc., 617 F.3d 380, 395 (6th Cir. 2010) (affirming summary judgment in favor of employer on "termination due to pregnancy" claim and emphasizing that plaintiff's "reliance on any expectation of medical leave [to which she was not entitled] was therefore unjustified"); and see, Staunch v. Continental Airlines, Inc., 511 F.3d 625 (6th Cir. 2008) (same).

However, with respect to Jenny Craig policy, the Court notes that plaintiff's

complaint alleges that Jenny Craig had previously allowed plaintiff to take leave (after the birth of her child in 2008), even though she was a part-time employee. As alleged, this appears to raise at least a permissible inference that plaintiff could request such leave under Jenny Craig policy, even if she was not entitled to such leave under the FMLA. The question of whether Jenny Craig's leave policy differed in any way from the leave provisions of the FMLA involves a question of fact not presently before this Court. While "[c]ourts do not sit as super personnel departments to second guess an employer's facially legitimate business decisions," Bush v. Am. Honda Motor Co., Inc., 227 F.Supp.2d 780, 797 (S.D.Ohio 2002), questions of fact may not be decided at this early stage of the pleadings.

Moreover, plaintiff's termination is not the only basis for her pregnancy/gender discrimination claim. The complaint alleges that Jenny Craig "refused to rehire" her because of her recent pregnancy, even though she was qualified for the job and able to return to work. Under McFee, the same case extensively cited by defendants, Ohio law requires that pregnant employees be treated the same for employment-related purposes as employees who are not pregnant but who are similar in their ability or inability to work. McFee, 126 Ohio St.3d at 185-186. The defendants do not address the "refusal to rehire" allegations of the complaint.

Plaintiff's complaint alleges that a non-pregnant employee replaced her, and that although this replacement quit shortly thereafter, Jenny Craig nonetheless informed plaintiff that no position was available to plaintiff when she sought to be hired back for her previous job. On a "refusal to hire" theory, plaintiff's complaint

can fairly be read as pleading that (1) she belongs to a statutorily protected class, i.e. recently pregnant (¶ 28); (2) she applied for and was qualified for the position (¶ 40); (3) despite her qualifications, the employer declined to hire her; and 4) the position was open (¶¶ 36-38).  See, e.g., Frick v. Potash Corp. of Saskatchewan, Inc., 2010 WL 3529253 (Ohio App. 3 Dist. 2010) (setting forth elements of "refusal to rehire" discrimination claim).  Taking these allegations as true for purposes of Rule 12, the complaint adequately states a plausible claim of gender/pregnancy discrimination based on a "failure to hire" theory.

In conclusion, although defendants have correctly argued the Ohio Supreme Court's holding in McFee regarding FMLA leave, Count Two of plaintiff's complaint also states a plausible claim of pregnancy discrimination on a "failure to hire" theory.  Thus, dismissal of Count Two is not appropriate at this stage of the pleadings.

Accordingly, the defendants' "Partial Motion to Dismiss" (doc. no. 6) is **DENIED** pursuant to Rule 12(b)(6); any responsive pleading shall be filed by December 1, 2011.

IT IS SO ORDERED.

                                             s/Herman J. Weber
                                     Herman J. Weber, Senior Judge
                                     United States District Court